**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAMIEN MORGAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 4:17CV2040 JCH |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of *pro se* Petitioner, Damien Morgan, pursuant to 28 U.S.C. § 2255 to vacate, set aside, or to correct his sentence. The matter is fully briefed and is ready for disposition.

## BACKGROUND

The Petitioner seeks relief for his conviction of Production of Child Pornography and Attempted Production of Child Pornography to which he pleaded guilty on October 22, 2015. 4:14CR343CEJ-1 ECF No. 118 Plea Agreement. Petitioner does not challenge his guilty plea in this Motion. The facts relevant to this motion are contained in the plea agreement entered by the parties. *See,* 4:14CR343CEJ-1 ECF No. 118. The facts are as follows:

On August 4, 2013, Sergeant Bob Muffler of the St. Louis City Police Department was conducting an authorized online undercover operation of individuals offering or possessing images of child pornography on BitTorrent, which is a peer-to-peer network. During this investigation he located an IP address offering to share videos which contained values that matched known child pornography. An investigative subpoena was sent to Charter Communications to obtain

information as to the owner of the IP address. It was learned that the IP address was assigned to the Petitioner.

On October 18, 2013, St. Louis City Police Detective Michael Spreck obtained a valid state search warrant for Petitioner's apartment. On October 23, 2013, the search warrant was executed. Prior to the executing of the search warrant, detectives conducted surveillance and observed Petitioner leave the residence. Detectives conducted a *Terry* stop of Petitioner. Petitioner was placed under arrest for an active warrant for no fare transit. Petitioner was advised of his *Miranda* rights which Petitioner waived. Petitioner admitted to previously using the peer-to-peer programs BitTorrent, FreeNet, and UTorrent. He admitted to owning a Dell and an ASUS laptop computer. Petitioner denied having child pornography on his computers. Petitioner gave officers a key to enter his residence.

During the execution of the search warrant, officers seized numerous computer media from the living room including a Dell XSP desktop computer and an ASUS laptop computer. Two hard drives were connected to the Dell XSP desktop computer. Detective Bobby Baine, a qualified forensic examiner, conducted a preliminary examination on one of the hard drives and located 13 images of a prepubescent minor female laying down on a dark colored mattress. Several of the images depicted a finger touching her genitals. Det. Baine also observed Petitioner's left forearm, which had an identifiable sleeve tattoo, in one of the photographs.

Petitioner was taken to the police station. Detectives questioned him about the images located on one of the hard drives. The Government contends that the Petitioner explained that he had placed an ad on Craigslist for a Pedo Mom. He indicated that he received a response from a woman named Michelle who came to his residence three weeks prior. A week prior, she brought her 5-year old daughter who was depicted in the images. Petitioner stated that Michelle used her

cellphone to take photographs of him touching the child. Michelle then uploaded them onto the Petitoner's Dell XPS. Petitioner denied knowing the name of the child or Michelle's last name. Petitioner then asked for an attorney and questioning stopped.

It was determined by Det. Baine that the images were taken on a Galaxy S2 Sky Rocket i727 cell phone. Officers then met with Assistant Circuit Attorney S.M. to apply for state charges and secure a second search warrant for Defendant's residence. During the meeting with Assistant Circuit Attorney S.M., Det. Spreck conducted a computer inquiry of Petitioner's public Facebook account. Det. Spreck located several photographs posted on Petitioner's account of a child who resembled the child depicted in the images located on Petitioner's hard drives. Det. Spreck observed a woman named J.U who also had the same pictures of the child posted on her account. J.U. was Petitioner's ex-girlfriend.

On October 23, 2013, Detectives executed a second search warrant on Petitioner's residence where they seized a black futon and blanket. Det. Spreck made contact with J.U who stated that she had two female children who had recently spent the night at Petitioner's. She identified the children as B.U., age 2 and C.U, age 12. J.U. identified her children from one of the recovered photos. Detectives later seized clothing featured in one of the images from J.U.'s residence. J.U. confirmed that on October 18, 2013 B.U. and C.U. spent the night at Petitioner's residence. Petitioner had offered to babysit because J.U. had a school commitment.

Det. Baine conducted a forensic scan of the Dell laptop's internet activity. When looking at the Google search engine, he noticed that on October 17, 2013, a user had conducted a search for "child dosage for trazodone" and "how long does a single dosage of trazodone last." Trazodone is a medication commonly used to treat depression, with side effects of drowsiness. Additional

forensic analysis on the Dell laptop revealed videotapes of C.U. and B.U. getting undressed and going in the bathroom.

Detectives secured a third search warrant for Petitioner's residence. This search was executed on October 30, 2013. During this execution, detectives seized a hidden camera from the bathroom, a webcam, trazodone, and an empty cellphone box for an AT&T Galaxy Sky Rocket i727 cell phone from the living room.

From the examination of the ASUS laptop, Det. Baine located 70 video files and 425 image files of child pornography. Det. Baine also located a log indicating that on October 2, 2013, a Samsung SGH-I727 phone was built to the computer. Det. Baine located 13 image files depicting victim B.U. these were the same images that were recovered from the ASUS computer. These images were determined to have been taken with a Samsung SGH-I727 phone. Det. Baine also located two video files that were made with the hidden camera in the bathroom that depicted C.U. and B.U. Petitioner can be heard speaking on one of the videos. Det. Baine also examined a SanDisk 16GB Micro SD card which contained 22 videos of child pornography and image files depicting Petitioner and B.U. Det. Baine determined that these images were taken with a Samsung SGH-I727 phone. Det. Baine also examined a SanDisk USB 8GB thumb drive which contained 231 images of child pornography, and a Toshiba external USB drive which contained one video of child pornography.

At the guilty plea hearing on October 22, 2015, before the Honorable Carol E. Jackson Petitioner Morgan, acknowledged, under oath, that these facts were true. 4:14CR343CEJ-1, ECF No. 155, at 17.

Petitioner now asserts contradicting facts. Petitioner asserts that Det. Spreck improperly seized his cellular device. (ECF No. 1 at 10,18). Petitioner states that when he arrived at the police

4

station he indicated that he informed detectives that he wanted an attorney and would not speak with them and that his request was ignored by the detectives. (ECF No. 1, at 21). Petitioner additionally states that he refused to give Det. Spreck information about the contacts in his phone and that he observed Det. Spreck search the HTC phone. (ECF No. 1, at 10; ECF No. 17, at 2). Petitioner states that he requested that Det. Spreck allow him to turn off his phone and was denied because it violated department policy for suspects to use their phones *Id.* In regard to Detectives observations of his identifying tattoo, Petitioner asserts that he was forced to remove his jacket and shirt during the interview. (ECF No. 1, at 17).

Finally, Petitioner recounts the following events:

> …Detective Bobby Baine entered the office and gave him [Det. Spreck] some printouts. Detective Spreck whispered with Detective Baine and then gave him the cellphone and Detective Baine left the office. After he left, Detective Willford closed the office door and leaned against it and Detective Spreck came towards me holding out a photograph and demanded I tell them who the girl in it was. I told him that I wanted an attorney and I would not speak with him. Detective Spreck began to smack me in the side of the head and screaming that he was going to kill me if I didn't tell him who the girl was and where he could find her. I continued to refuse to speak with him and he struck me so hard that his wrist watch was broken on the side of my head…. Finally, Detective Baine returned to the office with a camera. When he entered the office I informed him of the assault and he said 'I wasn't present and know nothing about it.' After being forced to remove my clothing and being recorded by Detective Baine, he left and once again returned, this time with more computer printouts from my email account about my [C]raigslist.com personal postings. Detective Spreck constructed a false story about me using the e-mail to obtain sex with the child in the photograph and attempted to force me to sign a statement and waiver of my rights. I refused to sign any waiver or the false statement and was again subjected to another assault.

*Id.*, at 21-22.

The Government disputes these facts and states that Det. Spreck conducted a pat-down of Petitioner's Person and located a cellphone and a set of keys (ECF No. 12, at 2). The Government asserts that Det. Spreck did not view the contents of the phone at that time. *Id.* The Government

asserts that before beginning an interview, Petitioner asked Det. Spreck if he could call his place of employment and his sister. (ECF No. 12, at 3). Det. Spreck handed Petitioner the previously seized cell phone, but observed Petitioner's actions, including the contact information on the phone. *Id.* Det. Spreck saw A.E.'s contact information and advised Petitioner that he would need A.E.'s contact information to return her computer to her. *Id.* Det. Spreck also observed contact information for J.U. *Id.* Petitioner told Det. Spreck that J.U. was his ex-girlfriend. *Id.* The Government asserts that Petitioner did not object to Det. Spreck observing his phone and writing down numbers. *Id.*

Regarding the photographing of Petitioner's arm tattoo the Government asserts that, Det. Spreck left the room and made contact with Det. Baine who advised Det. Spreck that he had located child pornography on the Dell computer. (ECF No. 12, at 3). Det. Baine also advised Det. Spreck that he observed the arm of the individual touching the child in the photographs; and that that person had a left arm tattoo sleeve. *Id.*, at 4. Det. Spreck alerted Det. Baine to Petitioner's arm tattoo. *Id.* Det. Baine then entered the office room and asked Petitioner to see his arms. *Id.* The Government states that Petitioner showed Det. Baine his arms and Det. Baine took photographs of Petitioner's tattoos. *Id.* The Government states that Det. Baine did not force Petitioner's sleeves up. *Id.*

At the sentencing hearing on February 22, 2016, Judge Jackson sentenced Petitioner to a term of imprisonment of 360 months. Morgan filed a direct appeal on March 1, 2016 and on July 19, 2017 he timely filed this motion to vacate, set aside, or correct his sentence, under 28 U.S.C. §2255.

## DISCUSSION

Upon review of the pending motion pursuant to §2255, the Petitioner raises the following claims for post-conviction relief.

(1) Ineffective Assistance of Counsel Claims:
    a. Counsel was ineffective for failing to call witnesses and present exculpatory evidence during the evidentiary hearing;
    b. Counsel was ineffective for failing to investigate and present evidence of alleged constitutional rights violations committed by detectives in the St. Louis City Police Department;
    c. Counsel was ineffective in failing to impeach Det. Spreck's testimony during the evidentiary hearing
    d. Counsel was ineffective for failing to call defense witnesses during the evidentiary hearing; and
    e. Counsel was ineffective for refusing to allow Petitioner to testify during the evidentiary hearing
(2) Constitutional Rights Violations:
    a. Detectives searched Petitioner's cellular device without a warrant;
    b. Detectives forced Petitioner to remove his clothing to photograph his tattoos without a warrant;
    c. Detectives accessed Petitioner's email accounts without a warrant;
    d. Detectives exceeded the scope of the search warrant and seized items not authorized by the warrant;
    e. Detectives submitted an affidavit with false claims
    f. Detectives ignored Petitioner's request for an attorney
    g. Court placed and improper limit on cross examination concerning craigslist adds
(3) Petitioner argues that the government committed prosecutorial misconduct by withholding a DNA lab report and allowing perjured testimony from Det. Spreck.
(4) Petitioner argues that he was denied a fair and impartial trial because the Court allowed the Government to use Craigslist personal ads which were prejudicial.
(5) Petitioner argues that the Court committed error in applying the four level enhancement under U.S.S.G.§2G2.1(b)(4) because the images did not depict sadistic or masochistic content.

Petitioner's motion was timely filed.

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack,..."  28 U.S.C. § 2255(a).

The Court declines to hold an evidentiary hearing on this motion. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion for Habeas unless the motion and the files and the records of the case conclusively show that Petitioner is not entitled to relief. *See Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008)(internal quotations and citations omitted). "No hearing is required …where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* Here, Petitioner's claims are either inadequate or refuted by the records before the Court, therefore no evidentiary hearing is required.

## I.     Ineffective Assistance of Counsel Claims

Petitioner raises multiple instances in which he asserts his counsel was ineffective in her representation of him. The movant has a heavy burden to establish claims of ineffective assistance of counsel pursuant to §2255. *See, DeRoo v. United States*, 223 F. 3d 919, 925 (8th Cir. 2000). To succeed on an ineffective assistance of counsel claim, the Petitioner must show that counsel's performance was not only deficient, but also the deficient performance prejudiced the Petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001). The performance of an attorney is deemed deficient if it falls "below an objective standard of reasonableness." *Sera*, 267 F.3d at 874. There is, however, a "strong presumption that counsels conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006)(quoting *Strickland*, 446 U.S. at 689). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). A court, when evaluating a claim of ineffective assistance of counsel must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The holding in "*Strickland*, does not guarantee perfect representation, only a 'reasonably

competent attorney.' Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the Petitioner [Petitioner] was denied a fair trial." *Harrington v. Richter*, 562 U.S. 86, 110 (2011)(internal citations omitted). Furthermore, the Supreme Court has indicated that there are "countless ways to provide effective assistance in any given case, and "[a]n attorney can avoid activities that appear 'distractive from more important duties' while still providing constitutionally effective assistance." *Id.* at 107.  More plainly, there is a strong presumption that counsel acted competently. *See, Ford v. Lockhart*, 904 F.2d 458, 462 (8th Cir. 1990). As the second prong of the inquiry into whether there was ineffective assistance of counsel, Petitioner must show that, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Petitioner must show prejudice.

Petitioner cannot demonstrate that he was prejudiced by his attorney's performance in this case. As a preliminary matter Petitioner does not allege that he would not have pleaded guilty if his attorney had advocated on his behalf differently. Furthermore, Petitioner does not challenge his guilty plea on any grounds in his Motion for Habeas. Petitioner knowingly and voluntarily pleaded guilty to these offenses and to the factual basis supporting the charge in his plea hearing. "'Solemn declarations in open court carry a strong presumption of verity.'"  *Smith v. Lockhart*, 921 F.2d 154, 157 (8th Cir. 1990) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)). Therefore, Petitioner cannot meet the second prong of the *Strickland* analysis. Even if Petitioner could show prejudice, Petitioner has failed to meet the requisite first prong of *Strickland* by adequately demonstrating that counsel's representation was ineffective.

### A. Petitioner's Claim That Counsel Failed to Present Exonerating Evidence

Petitioner argues that his counsel, Ms. Beimdiek "refused to provide effective and adequate legal assistance." (ECF No. 1, at 4). Petitioner argues that Ms. Beimdiek failed to present the Court with exonerating evidence. *Id.* Specifically, the Petitioner states that Ms. Beimdiek was provided with sales receipts from a computer store and written statements provided by the owners of the seized computer systems. *Id.* at 5. The Government argues that these statements alone are not enough to show ineffective assistance of counsel because the Petitioner has not shown how this evidence would have been exculpatory. (ECF No. 12, at 12). In his Reply, Petitioner argues that the evidence indicated that Petitioner was not the owner/user of the computer systems that contained child pornography, that the witness statement was from the owner of the computer systems. (ECF No. 17, at 5).

Petitioner must show that counsel had been aware of exculpatory evidence; that counsel unreasonably failed to offer such evidence; and that the introduction of that evidence was so prejudicial that the balance between the defense and the prosecution is upset, and the verdict must therefore be rendered suspect. *English v. United States*, 998 F.2d 609, 613 (8th Cir. 1993). Petitioner fails to argue that the alleged previous owners of the computers were responsible for the child pornography, therefore, the statement from the previous owner, and sales receipts do not demonstrate that the evidence was exculpatory.  Petitioner at no time argues that counsel failed to present evidence that showed the computers were never in his possession or that he did not produce the child pornography recovered in this case. The Court finds that Petitioner's claim as to Ms. Beimdiek's failure to present evidence of the sales receipts or the previous owner of the computer systems fails.

**B. Petitioner's Claim that Counsel Failed to Present Evidence of Constitutional Violations**

Petitioner argues that Ms. Beimdiek was ineffective because she failed to investigate and present evidence of the alleged infringement on Petitioner's constitutional rights. (ECF No. 1, at 5). Petitioner specifically points to instances in which he believes Det. Baine accessed his email without a warrant, searched Craigslist advertisements without a warrant, and detectives conducted an unlawful search of his cellular phone. *Id.* at 5-6. The Government asserts that Ms. Beimdiek did advance an argument that the cellular telephone was subject to a search without a warrant. (ECF No. 12, at 12), *and see,* 4:14CR343 CEJ-1, ECF No.147.  Ms. Beimdiek also questioned Det. Spreck about Petitioner's cellular telephone at the evidentiary hearing. (ECF No. 12, at 13) *and see,* 4:14CR343 CEJ-1, ECF No.147, 97-99.  Petitioner further claims that detectives accessed his email account without a search warrant and found Craigslist adds that they used to match to the Petitioner's IP address. Petitioner argues that detectives lied and claimed that the postings were discovered on a dell computer. (ECF No. 1, at 5). The Government asserts that evidence presented at the evidentiary hearing established that a subpoena was sent to Craigslist and the postings were obtained through that subpoena, and postings were recovered from Petitioner's computer. (ECF No. 12, at 13). Ms. Beimdiek  cross examined Det. Spreck regarding the search. *and see,* 4:14CR343 CEJ-1, ECF No.147, at 85-86.

As discussed above, the burden to show ineffective assistance of counsel is high. Petitioner has not shown that Ms. Beimdiek made such unreasonable errors as to change the outcome of the proceeding. *See, Strickland,* 466 U.S. at 694. In fact, Ms. Beimdiek raised the constitutional violation issues at the evidentiary hearing, and cross examined witnesses as to their testimony on behalf of the Petitioner. Therefore, Petitioner's claim for ineffective assistance of counsel based upon the failure of Ms. Beimdiek to present evidence of constitutional violations is denied.

**C. Petitioner's Claim that Counsel Failed to Impeach the Testimony if Detective Spreck**

Petitioner argues that Ms. Beimdiek failed to impeach Det. Spreck with contradictory statements. (ECF No. 1 at 6). Petitioner specifically states that during the evidentiary hearing, Det. Spreck claimed that he kept Petitioner's cellphone in his personal possession from October 23, 2013 until a warrant was obtained October 30, 2013. *Id.* Petitioner claims that "Ms. Beimdiek was in possession of evidence proving that the Detective was lying in Court, but refused to impeach him and present evidence to the court." *Id.*

The Government argues that Petitioner does not indicate what this evidence was or how it would refute Det. Spreck's statements, nor does the Petitioner indicate how this conduct would entitle him to relief. The Government argues that absent an indication of the relevance of prejudice associated with Det. Spreck's alleged possession of the cellphone on the outcome of Petitioner's case, the Petitioner cannot meet his burden. (ECF No. 12, at 14). The Government additionally asserts that counsel for the Petitioner attempted to undermine the testimony of Det. Spreck at the evidentiary hearing. The Government argues that Petitioner does not advance more than conclusory statements in support of his claim that Ms. Beimdiek failed to impeach Det. Spreck.

In his reply, the Petitioner claims that the actions of Ms. Beimdiek at the evidentiary hearing undermined his defense in that, had she not allowed Det. Spreck to perjure himself, the cellphone evidence would have been suppressed. (ECF No. 17, at 8). Petitioner fails to indicate how the suppression of such evidence would have impacted his case. Mere conclusory allegations are not sufficient to support a claim for ineffective assistance of counsel. *See, Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001). As discussed previously, Petitioner has additionally failed to clearly show prejudice. The Petitioner's claim for ineffective assistance of counsel as to defense counsel's failure to impeach Det. Spreck is denied.

### D.  Petitioner's Claim that Counsel Failed to Call Defense Witness

Petitioner argues that counsel was ineffective because, "Mrs. Beimdiek after having the subpoenas issued first contacted the requested witnesses [Lawrence and Helen Minth] and instructed them not to appear and not testify on [petitioner's] behalf." (ECF No. 1 at 7). Petitioner claims that, "she told [Lawrence and Helen Minth][Petitioner] was guilty and that they should not testify [on his] behalf and should have no contact with [him]." *Id.* Petitioner additionally identifies other witnesses that he claims he requested counsel to subpoena, including Justin Van Doren and Det. Bobby Baine. (ECF No. 1 at 6).

"Decisions relating to witness selection are normally left to counsel's judgement, and this judgment will not be second-guessed in hindsight." *Hanes v. Dormire*, 240 F.3d 694,698 (8th Cir. 2001)(internal citations and quotations omitted). "Trial counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary. When a claim for ineffective assistance of counsel is alleged on the basis of failing to investigate or act, the reasonableness of the nonfeasance must be assessed in light of all circumstances, and a significant degree of deference is given to counsel and his or her professional judgement." *Griffin v. Delo*, 33 F.3d 895, 901 (8th Cir. 1994). Additionally, "a court need not determine whether a counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claims is not to grade counsel's performance." *Strickland*, 466 U.S. at 697. The claim can be disposed of on the grounds that they "lack sufficient prejudice" first. *Id., and see, United States v. Apfel*, 97 F.3d 1074,1076 (8th Cir. 1996)("we need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice."). The Court has determined that because Petitioner has not raised any challenge to his guilty plea, he has failed to establish prejudice.

**E.  Petitioner's Claim that He was Refused the Opportunity to Testify at Evidentiary Hearing**

Petitioner's final argument for ineffective assistance of counsel states that counsel was ineffective for refusing to allow Petitioner to testify during the evidentiary hearing. Petitioner maintains that he would have testified "to the actions I directly observed detectives make." (ECF No. 1, at 7).  In his reply, Plaintiff further states that he would have stated "under oath that [he] was not guilty and that the computers seized did not belong to [him]…" (ECF No. 17, at 9). This is directly contradictory to the facts Petitioner attested to in his guilty plea. As discussed supra, Petitioner has not claimed that his Plea was invalid. The Petitioner therefore cannot show the requisite prejudice necessary to demonstrate ineffective assistance of counsel because he did not have the opportunity to testify on his behalf in this case.

**II.      Constitutional Rights Violations**

In addition to his claims for ineffective assistance of counsel, the Petitioner also alleges several constitutional rights violations, the majority of which pertain to search warrants issued in this case. The Government argues, and the Court agrees, that some of Petitioner's claims are procedurally defaulted and those that are not have been properly reviewed and dismissed by the Court of Appeals.

**A.  Petitioner's Procedurally Defaulted Claims.**

Procedural default of a claim can be excused in two circumstances. Firstly, the Petitioner may overcome the procedural default if he can identify cause to excuse the default and demonstrate actual prejudice resulting from the errors that he claims. *See Mathews v. United States*, 114 F. 3d 112, 113 (8th Cir. 1997); *and see, Ramey v.United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). The "cause and prejudice" standard requires Petitioner to show that "some objective factor external to the defense" impeded his efforts to raise the issue as required by each relevant procedural rule but

also that the error Petitioner alleges "worked to his actual and substantial disadvantage, infecting the entire trial with error." *See, Coleman v. Thompson*, 501 U.S. 722, 753 (1991)*; and see, United States v. Frady*, 456 U.S. 152, 170 (1982). Secondly, a Petitioner can overcome the default if the petitioner can demonstrate actual innocence. *Johnson v. United States*, 278. F.3d 839, 844 (8th Cir. 2002)("In order to obtain collateral review of a procedurally defaulted issue a §2255 movant must show either cause and actual prejudice or that he is actually innocent."). Therefore, "[a] movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error." *United States v. Apfel*, 97 F.3d. at 1076.

### 1. Access of Online Accounts Without Search Warrant Authorization

Petitioner argues that law enforcement officers violated his constitutional rights when they accessed the email account cowens79@lycos.com without a warrant. Petitioner asserts that the Craigslist ads were not recovered from Petitioner's computers but that the ads were recovered from the illegal search of his email account. Petitioner did not raise this issue on direct appeal. If a claim could have been raised on direct appeal but was not, it cannot be raised in a §2255 motion. "[A] collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." *Poor Thunder v. United States*, 810 F.2d 817, 823 (8th Cir. 1987)(internal citation omitted). Petitioner has failed to identify a reason why his claim was not raised in his appeal. Additionally, Petitioner is unable to demonstrate actual prejudice because Petitioner does not claim innocence. Therefore, Petitioner's claim that his constitutional rights were violated in the course of law enforcements inquiry into the craigslist ads is procedurally defaulted.

### 2.   Items Seized During Search Warrant

Petitioner asserts that his constitutional rights were violated because officers seized multiple items that were not authorized by the search warrant, including personal writings, documents, sales receipts, phone numbers, and contact information. The Government asserts that this issue was never raised on appeal. "[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693, 155 L. Ed. 2d 714 (2003); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997). Petitioner has not advanced any argument about why this claim was not raised on direct appeal, nor does Petitioner demonstrate how the taking of these items prejudiced him. Petitioner's claim is therefore procedurally defaulted.

### 3.   False Claims Contained in Search Warrant

Petitioner argues that his constitutional rights were violated because officers knowingly submitted a supporting affidavit with false claims. Petitioner asserts that law enforcement officers used that affidavit to seize items other than computers including hard drives and media storage devices. The Government argues that this claim has been procedurally defaulted because Petitioner failed to raise it on appeal. To overcome procedural default Petitioner must show cause and prejudice. *See, Massaro,* 538 U.S., at 504. Petitioner has not advanced any arguments as to why this issue was not raised on appeal. Petitioner additionally does not indicate what false claims were made, nor does he present any argument as to why the warrant lacked probable cause. Finally Petitioner fails to assert actual innocence. Petitioner has failed to show cause or prejudice as to his claim that the search warrant contained false statements. Petitioner's claim pertaining to the alleged false claims as the basis for one of the search warrants issued in this case is therefore procedurally defaulted.

### 4.   Request for an Attorney

Petitioner asserts that his constitutional rights were violated when he was questioned by law enforcement officers. Specifically, he maintains that he requested an attorney but detectives did not allow him to speak with an attorney. As a preliminary matter, the Petitioner during his Plea hearing acknowledged, under oath, that he asked for an attorney and all questioning stopped. Case No: 4:14CR343 CEJ ECF No. 118. Petitioner now contradicts this in his claim. Petitioner now states that his statements during interview by law enforcement were not voluntary. This issue was not raised on direct appeal. Nowhere in his Petition for Habeas does the Petitioner discuss why this issue was not raised on appeal, nor does he assert in his ineffective assistance of counsel claims that counsel was ineffective for the failure to raise this claim on appeal. Furthermore, Petitioner does not argue prejudice, nor can he show actual innocence. Therefore, Petitioner's claim pretraining to the alleged denial of his request for an attorney is denied.

### B.  Claims addressed by the Eighth Circuit on Appeal

### 5.   Search of Cellular Telephone without a Search Warrant

Petitioner argues that his Fourth and Fourteenth constitutional rights were violated because detectives seized his cellular telephone and searched it without a warrant. The Government asserts that Petitioner raised this issue in his direct appeal. Petitioner specifically states that his counsel did not adequately impeach Det. Spreck's testimony to establish that he had searched Petitioner's phone without a warrant. The Court has already determined that the Petitioner has not shown that he suffered from ineffective assistance of his counsel as to this point. In so much as Petitioner has raised a Fourth Amendment issue before the Court, the Eighth Circuit reviewed the issue on Petitioner's direct appeal.

On direct appeal, the Eighth Circuit determined that, the arresting officer seized a cell phone from Petitioner, that Plaintiff requested his cell phone to tell his employer and sister where he was. Police gave him the cell phone under their supervision and as Plaintiff scrolled through his contacts, he did not object as a detective watched his screen. The detective's testimony indicated that Petitioner spontaneously shared facts about the contacts and the detective wrote down some names and numbers. *United States v. Morgan,* 842 F.3d 1070, 1073 (8th Cir. 2016) *cert. denied*, 137 S. Ct. 2176 (2017). It is clear that the Eighth Circuit addressed the issues raised here on direct appeal. The Court of Appeals stated in its analysis that:

> [Petitioner] had no reasonable expectation of privacy when he voluntarily displayed his cell-phone screen in the presence of detectives. [Petitioner] had his phone because he asked for it. He did not object when the detective observed his activities. And –according to the detectives uncontested testimony –[Petitioner] spontaneously shared information about his contacts with the detective. This is unlike officers looking on their own through the contents of a cell phone. Instead, it is an officer's mere observation of an item left in plain view. Which generally involves  no Fourth Amendment search.

> [Petitioner] believes that the plain-view doctrine applies only if: (1) the officer is in a lawful position to view the evidence, (2) the officer discovers the incriminating evidence inadvertently, and (3) the incriminating nature of the evidence is immediately apparent. [Petitioner] contends the last two conditions are not satisfied. This contention conflates the plain-view doctrine for seizures with the plain-view doctrine for searches. An officer does not violate the Fourth Amendment by viewing evidence from a position he lawfully occupies, remembering it, and using it later. Observing what is in plain sight does not implicate the additional requirements for a seizure; being in a lawful position to observe evidence is sufficient.

> [Petitioner] had no reasonable expectation of privacy in his cell-phone screen once he made it visible to the public by displaying it in the presence of a detective.

*United States v. Morgan*, 842 F.3d 1070, 1073-5 (8th Cir. 2016) *cert. denied*, 137 S. Ct. 2176 (2017)(internal quotations and citations omitted). Petitioner has not presented an argument substantially different from that raised in his direct appeal. Upon review of the record, the Court

will not depart from the analysis set forth above by the Eighth Circuit.  Based on the facts before the Court, Petitioner had no reasonable expectation of privacy in his cell phone therefore, Petitioner's claim for relief due to the alleged improper search of his cellular devise is denied.

### a.  Photographs of Petitioner's Tattoos

Petitioner claims that his constitutional rights were violated because detectives forced him to remove his clothing to photograph his tattoos. The Government denies that Petitioner was forced to remove his clothing and asserts that Petitioner raised this issue in his direct appeal.

On direct appeal, the Eighth Circuit determined that "[t]he arresting officer … while handcuffing [Petitioner], noticed a tattoo on his wrist… While [Petitioner] was in custody, a different detective found original images of child pornography on a computer from his home. One image showed a man with a tattooed arm touching a female child's genitalia. The detective who found the images asked [Petitioner] to lift the sleeve of his shirt so that he could photograph his tattoo. [Petitioner agreed, lifting his sleeve and allowing photographs without objection. [Petitioner]'s tattoos matched the tattoos in the photographs from his computer." *United States v. Morgan*, 842 F.3d at 1073.  It is clear that the Eighth Circuit addressed the issues raised by Petitioner regarding his tattoo on direct appeal. The Court of appeals stated that:

> The magistrate judge found that detective "asked [Petitioner] to move his shirt sleeve so that [the detective] could take a photograph of [his] tattooed arm. [Petitioner] agreed to do so… The magistrate judge found that [Petitioner] consented to the photographs of his tattoo. The district court adopted that finding and found no evidence that [he] was coerced. Nothing indicates these findings are clearly erroneous. The district court correctly denied the motion to suppress the photographs of [Petitoner]'s tattoos.

*United States v. Morgan* 842 F.3d at 1075 (internal quotations and citations omitted). In so much as Petitioner's claims restate his argument before the Eighth Circuit, the Court will not depart from the analysis set forth above.

The Petitioner does attempt to alter his claim before the Eighth Circuit by now claiming that the detectives forced him to remove his clothing. Petitioner argues, as was discussed supra in petitioner's claims for ineffective assistance of counsel, that he was unable to refute the testimony at the evidentiary hearing because his attorney would not allow him to testify. The Court has already determined that Petitioner's ineffective assistance of counsel claim on these grounds fails. The trial court determined that the testimony of the officers during the evidentiary hearing was credible. Based on the facts before the Court, Petitioner was not subject to an unconstitutional search when he either showed or displayed his tattoos in front of the detectives. Petitioner's claim that his constitutional right to protection from unreasonable search and seizure is fails.

### III.     Petitioner's Claim Regarding the Limit on Cross Examination

Petitioner asserts that the magistrate judge in the underlying criminal case put an improper limit in the defense attorney's examination concerning the I.P. address and location of the computer that drafted craigslist ads. The Government asserts that "During the testimony, Ms. Beimdiek asked Det. Spreck whether he knew if the Craigslist postings or any IP addresses associated to those postings were connected to Petitioner's residence. The Government objected because the testimony was not relevant and the Magistrate Judge agreed." (ECF No. 12, at 28). Petitioner argues that "this denied the defense the right to question the witness as to his credibility and truthfulness and reveal the violation of the defendants [sic] 4th Amendment Rights and the unlawful search of online e-mail accounts (ECF No. 1, at 23). Petitioner did not raise this issue on direct appeal.

Relief under §2255 is available to a petitioner for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. *United States v. Apfel*, 97 F.3d. at

1076. Petitioner's claim does not clearly fall into the narrow range of injuries appropriate for Habeas review because Plaintiff has not argued that this limit has prejudiced him in any way. Petitioner does not provide details about what would have been presented during this testimony, nor has Petitioner shown that there was any likelihood that the result of the proceeding would have been different had counsel been permitted to cross examine Det. Spreck about whether or not the postings of Craigslist came from Petitioner's IP address. Furthermore, Petitioner acknowledged, under oath, that the statement of facts of the Plea Agreement were true. Case No. 4:14CR343 CEJ, Transcript of Plea Hearing ECF No. 155, at 18.  In that statement of facts it is stated that the IP address recorded as containing values that matched known child pornography was the IP address assigned to Petitioner. Case No. 4:14CR343 CEJ, Plea Agreement ECF No. 118, at 3. Therefore, Petitioner's habeas claim pertaining to the limiting of cross examination is denied.

### IV.    Prosecutorial Misconduct Claims

Petitioner alleges that the Government committed prosecutorial misconduct. Petitioner argues that the Government knowingly withheld exculpatory evidence in the form of a DNA laboratory report. Petitioner additionally argues that the Government knowingly allowed the perjured testimony of Det. Spreck regarding the search of a cellular phone.

Generally, "'prosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render [Petitioner's] conviction a denial of due process.'" *Louisell v. Dir. Of Iowa Dep't of Corr.*, 178 F.3d 1019, 1023 (8th Cir. 1999)(quoting *Roberts v. Bowersox*, 137 F.3d 1062, 1066)(8th Cir. 1998)). To prevail, a party must satisfy both prongs of the two part test.  *Graves v. Ault*, 614 F.3d 501, 507 (8th Cir. 2010). First, Petitioner must show that the prosecutor's conduct was improper. *Id.* Second, the Petitioner must show that the improper conduct caused prejudice to the Petitioner by depriving him of a fair trial. *Id.*

Petitioner is only deprived of a fair trial where the improper conduct could reasonably have affected the jury's verdict. *Id.* Specifically, "to receive habeas relief, a petitioner "must show that there is a reasonable probability that the error complained of affected the outcome of the trial – i.e. that absent the alleged impropriety the verdict probably would have been different." *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002). When determining whether a party has been denied a fair trial, a court considers the cumulative effect of the misconduct, the strength of the properly admitted evidence of the party's guilt, and any curative actions taken by the district court. *Graves,* 614 F.3d at 507–08.

### A.  DNA Laboratory Report

Petitioner argues that the Government knowingly withheld exculpatory evidence in the form of a DNA laboratory report. Petitioner asserts that the report would contradict "the prosecutions claim of sexual contact between the defendant and victim and was withheld from the defense because it would have harmed the prosecutors case." (ECF No. 1, at 24)  The Government argues that Petitioner's claim must fail because the alleged lab report was provided in discovery to defense counsel and is not exculpatory. (ECF No. 12, at 30). The Government asserts that on March 20, 2015, the Government sent an email to Counsel for Petitioner wherein the Government notified her that it had received a DNA report on Petitioner's case. *Id.* The Government further asserts that the report does not refute the evidence of sexual contact between Petitioner and the victim. *Id.* The reports were inconclusive as to whose DNA the profile tested belonged to.[1] An

---

[1] According to the laboratory report, the DNA analyst tested two swabs of the outside of B.U.'s underwear, two swabs of the inside of B.U.'s underwear, and Petitioner's buccal swabs. The DNA analyst was unable to get a DNA profile from the two swabs of the inside of B.U.'s underwear. Additionally, although a partial profile was obtained from the outside of B.U.'s underwear, there was no DNA of B.U. to compare to that profile. Additionally, although Petitioner's DNA was not found as the major contributor, there was too little DNA from the additional contributor to determine whose DNA that profile belonged to. (ECF No. 12, at 30).

inconclusive report cannot be seen as exculpatory for the crime of Production of Child Pornography. Petitioner has therefore failed to show that any of his constitutional rights have been interfered with through prosecutorial misconduct.

### B. Testimony of Det. Spreck

Petitioner also argues that the Government committed prosecutorial misconduct because it allowed the perjured testimony by Det. Spreck. Petitioner alleges that his cellphone was searched and examined before the search warrant was signed. The Government argues that there is no evidence to support Petitioner's argument. The Government points to the evidentiary hearing in which Det. Spreck testified that he seized the cellphone from Petitioner and placed Petitioner under arrest on October 18, 2013; that he then obtained a search warrant for that telephone and that prior to the search warrant none of the detectives searched the phone. (ECF No. 12, at 31, citing, 4:14CR343 CEJ-1, ECF No.147, 19-20, 61, 66-67.

To vacate the judgment and sentence on grounds that the government knowingly used perjured testimony, two elements must be established. First, the use of perjured testimony, and second, knowledge by the prosecuting officials at the time the testimony was used that it was perjured. *United States v. Conzemius*, 611 F.2d 695, 697 (8th Cir. 1979). Plaintiff has not made a showing that the testimony was perjured or that the Government at the time of the testimony knew that it was perjured. In fact, the trial court found Det. Spreck to be credible in this case. The Petitioner, in his Petition for Writ of Heabeas Corpus, has already alleged that Ms. Beimdiek should have cross examined Det. Spreck as to his testimony, beyond this, Petitioner makes no showing as to the perjured nature of Det. Spreck's testimony. Petitioner has failed to show prosecutorial misconduct.

**V.      Supplemental Motion Claim: 4 Level Enhancement under U.S.S.G. §2G2.1(b)(4).**

On October 26, 2017, Petitioner filed a supplemental motion for Amendment of his §2255. Petitioner argues that he is entitled to relief under §2255 because he sentencing court erroneously applied the 4-level sentencing enhancement under U.S.S.G. §2G2.1(b)(4).   The Government asserts that Plaintiff has already raised this issue on appeal.

U.S.S.G. §2G2.1(b)(4) applies a sadism enhancement "If the offense involved material that portrays sadistic conduct or other depictions of violence; or an infant or toddler." At the sentencing hearing the District Court  specifically determined the photographs in question, were "the images of the two-year-old minor child" 4:14CR343 CEJ, ECF No. 153, at 5. The Court determined that the photos depicted Petitioner "with his fingers on the inside of her labia as opposed to the exterior area of her labia." 4:14CR343 CEJ, ECF No. 153, at 7. The Court additionally determined that Petitioner's conduct in the photographs constituted "a form of penetration." And stated that "even if penetration were or attempted penetration were the only types of conduct that warrant the application of this Guideline, [the Court] think[s] that… is a form of penetration. But again, [the Court] do[es]n't believe that *Belflower* means that only penetration meets the definition under the Guidelines. [The Court] believe[s] that when considering the Court's explanation, these are images in this case that certainly reflect the Defendant's intent to achieve sexual pleasure through the depiction of this child as a sexual object available for exploitation." *Id.* at 8.

The Court of appeals then addressed the same issue, which is now raised again before this court, and determined that the images did depict sadism. Specifically, the Eighth Circuit held that "if an image depicts actual or attempted penetration, it is per se sadistic." *Morgan*, 842 F.3d at 1076, quoting *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004). The Eighth Circuit goes on to state that "an image need not show actual or attempted penetration to portray sadistic

material." *Id.*, at 1076. The Sentencing Enhancement under U.S.S.G. §2G2.1(b)(4) was appropriate in this case. The Court declines to grant habeas relief as to Petitioner's supplemental claim.

## **CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED that Petitioner's Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or to correct his sentence is DENIED.

Dated this 22nd day of June, 2020.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRCT COURT